## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JOHANNES CLAUS, | Case No.: 1:19-cv-00197-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **DEFENDANT CANYON COUNTY'S MOTION FOR SUMMARY JUDGMENT**<br>**(Dkt. 28)** |
| CANYON COUNTY, IDAHO, a political subdivision of the State of Idaho, | |
| Defendant. | **PLAINTIFF JOHANNES CLAUS'S MOTION TO STRIKE**<br>**(Dkt. 40)** |

Pending before the Court are (i) Defendant Canyon County's Motion for Summary Judgment (Dkt. 28) and (ii) Plaintiff Johannes Claus's Motion to Strike (Dkt. 40). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 11). Mr. Claus claims Canyon County discharged, discriminated, and/or retaliated against him because he reported discriminatory pay practices based on his military service – a violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). The record, however, shows that Mr. Claus's termination from Canyon County's employ was unrelated to his military service or status as a veteran. Canyon County's Motion for Summary Judgment is therefore granted while Mr. Claus's Motion to Strike is denied as moot.

## I. BACKGROUND

Canyon County hired Mr. Claus in October 2016 and fired him in August 2018. Mr. Claus contends that his firing related to his complaints in 2017 that Canyon County's compensation structure improperly discounted his previous years of military service, thus

**MEMORANDUM DECISION AND ORDER - 1**

reducing his pay.  Because the parties' arguments are tethered to specific occurrences on dates certain, the factual background is presented in chronological format.

1.     In October 2016, Canyon County hired Mr. Claus as a Deputy Public Defender II with a $61,296 salary.  The position was at-will.  During the application process, Mr. Claus identified himself as a disabled veteran.  Pl.'s Compl. at ¶¶ 5-6 (Dkt. 1); Def.'s SOF at No. 1 (Dkt. 28-2).

2.     In May 2017, the Canyon County Public Defender's Office received salary recommendations for Fiscal Year 2018 (October 1, 2017 through September 30, 2018).[1] Relevant here, these recommendations tied attorney salaries to "years of service."  Questions (and confusion) soon arose about whether years of service meant all years since Bar admission or only years since Bar admission with relevant criminal law experience.  Numerous internal discussions about these competing distinctions and their application to the recommendations followed.  Def.'s SOF at Nos. 14-17 (Dkt. 28-2).

3.     In August 2017, Canyon County informed Mr. Claus that his years of service calculation was being decreased from 13 to 6 and that his salary would likewise re-align with a sixth-year Deputy Public Defender I.[2]  According to Canyon County, Mr. Claus's years of service were decreased because he did not practice criminal law (and, at times, was not even practicing law) for *all* of the 13 years since his 2004 Bar admission, including portions of his time as a military attorney doing civil work with the United States Air Force Judge Advocate

---

[1]  Tera Harden served as Chief Public Defender from October 1, 2014 to May 31, 2017. After Ms. Harden departed, Krista Howard served in an interim Chief Public Defender role from June 1, 2017 to October 1, 2017 before being replaced by Aaron Bazzoli as Chief Public Defender.  Def.'s SOF at No. 13 (Dkt. 28-2).

[2]  Though downgraded to a Deputy Public Defender I, Mr. Claus still received a pay increase from $61,296 to $67,156.  Def.'s SOF at No. 19.  Even so, any raise would have been larger had his JAG attorney service time been fully credited.  Pl.'s SODF at No. 19 (Dkt. 39-1).

**MEMORANDUM DECISION AND ORDER - 2**

General's Corp ("JAG").  Mr. Claus was one of seven individuals whose years of service were initially adjusted downward due to similar "gaps" in criminal law experience.  *Id*. at No. 18; Pl.'s SODF at No. 18 (Dkt. 39-1).

4.      On October 11, 2017, Mr. Bazzoli became Chief Public Defender.  Before then, however, Mr. Claus met with Mr. Bazzoli at his private office to share Mr. Claus's concerns about his years of service calculation – specifically that his work as a JAG attorney was improperly discounted under the new compensation structure.  Mr. Bazzoli took no action at that time, but indicated he would look into the matter further once he officially assumed his role as Chief Public Defender.  Def.'s SOF at No. 20 (Dkt. 28-2); Pl.'s SODF at No. 20 (Dkt. 39-1).

5.      In December 2017, Mr. Bazzoli hired Jesse Scott James as Chief Deputy Public Defender.  On December 12, 2017, the two met with Mr. Claus regarding his compensation.  At that time, Mr. Claus reiterated his concern about his years of service calculation and how he believed his reduced salary amounted to discrimination against him based on his military service and veteran status.  Mr. Claus also provided information about the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") at the meeting.  According to Mr. Claus, Messrs. Bazzoli and James were highly dismissive of his claim of discrimination.  Def.'s SOF at No. 21 (Dkt. 28-2); Pl.'s SODF at No. 21 (Dkt. 39-1).

6.      Soon after this meeting, Mr. Bazzoli investigated the application of the years of service calculation generally and as it related to Mr. Claus.  Mr. Bazzoli eventually lobbied for an upward adjustment for Mr. Claus and the other attorneys who had discounted years of service. He ultimately received permission to adjust Mr. Claus's years of service to 13 years.  On December 28, 2017, Mr. Bazzoli formally submitted a request for Mr. Claus to be paid as a 13-year attorney.  That request was approved on January 3, 2018.  Moving forward, Mr. Claus's salary was $83,895; he also received back pay to October 1, 2017 (the date Canyon County's

**MEMORANDUM DECISION AND ORDER - 3**

new compensation plan went into effect), making Mr. Claus whole.  Def.'s SOF at Nos. 22-24 (Dkt. 28-2); Pl.'s Compl. at ¶ 15 (Dkt. 1).

7.      Fast-forward to Friday, July 20, 2018, where Mr. Claus's legal assistant/paralegal, Christina Taillon, filed a Witness/Exhibit List in a sealed Child Protective Act ("CPA") proceeding.  The deadline for the filing was that day.  Later that evening, Mr. Claus became aware of the need to file an *Amended* Witness/Exhibit List, but did not know how to make an after-hours filing.  So, he emailed it to a friend, Ashley Wilson, to coordinate its filing via the iCourt electronic filing system.  Ms. Wilson was not employed by the Canyon County Public Defender's Office.  Still, she filed the Amended Witness/Exhibit List on Mr. Claus's behalf from her laptop at home.  The list included (i) the parties' true names, the client's name, and the names, addresses, phone numbers, and emails of four third-party witnesses; (ii) Mr. Claus's electronic signature as the attorney for the respondent; and (iii) a Certificate of Service signed by Ms. Taillon (even though she was not involved with the filing).  Def.'s SOF at Nos. 2-5 (Dkt. 28-2); Pl.'s SODF at Nos. 2-5 (Dkt. 39-1).

8.      Mr. Bazzoli learned of the filing the following week and investigated the matter.  Mr. James also spoke with Mr. Claus about the circumstances surrounding the filing.  Together, they believed Mr. Claus's actions seriously violated an attorney's ethical duty to his client, the Canyon County Public Defender's Office protocols and policies, and a breach of lawyer/client confidentiality governed by the Idaho Rules of Professional Conduct ("IRPC"), among other rules and laws.  Def.'s SOF at Nos. 6-9 (Dkt. 28-2); Pl.'s SODF at Nos. 6-9 (Dkt. 39-1) (further noting that Messrs. Bazzoli and James took the position that Mr. Claus's filing constituted a criminal filing, but never filed a Bar complaint).

9.      Mr. Bazzoli and/or Mr. James then talked with Idaho State Bar Counsel, Brad Andrews, about the filing and whether Mr. Claus's conduct violated the IRPC.  They then spoke

**MEMORANDUM DECISION AND ORDER - 4**

with the judge handling the CPA proceeding (the Honorable Courtnie Tucker), opposing counsel

to that proceeding, and a representative from the Canyon County Prosecuting Attorney's office

regarding the incident.  Def.'s SOF at No. 11 (Dkt. 28-2); Pl.'s SODF at No. 11 (Dkt. 39-1).

      10.      On July 27, 2018, Mr. Bazzoli placed Mr. Claus on administrative leave.  Mr.

Claus requested a good-faith hearing and detailed his belief that his termination was the result of

retaliation and discrimination on the basis of his military service.  A good-faith hearing was held

on August 2, 2018.  In an August 6, 2018 letter, Mr. Bazzoli terminated Mr. Claus, stating:

> A review of Canyon County records finds your termination is premised upon your
> actions in a termination matter where you violated court rules and professional
> standards by directing a document to be filed by someone other than our support
> staff and who is not employed or authorized to be filing documents on behalf of
> this office, and other issues previously brought to your attention, not upon any
> retaliation claims that were raised in 2017 and addressed to your satisfaction related
> to compensation.

Canyon County paid Mr. Claus through August 7, 2018, the effective date of his termination.

Def.'s SOF at No. 12 (Dkt. 28-2) (citing Exs. G & H to Bazzoli Decl. (Dkt. 29)); Pl.'s SODF at

No. 12 (Dkt. 39-1).

      11.      On May 31, 2019, Mr. Claus initiated this action, alleging that Canyon County

discriminated against, retaliated against, and terminated him because he reported discriminatory

pay practices based on his previous military service.  He asserts related claims for (i) termination

in violation of USERRA and (ii) negligent/intentional infliction of emotional distress.  Pl.'s

Compl. at ¶¶ 32-44 (Dkt. 1).   Canyon County seeks summary judgment on each claim.

## II.  ANALYSIS

**A.**      **Canyon County's Motion for Summary Judgment (Dkt. 28)**

      1.      <u>Summary Judgment Standard</u>

      "The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

**MEMORANDUM DECISION AND ORDER - 5**

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id*. at 252.

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (i) by producing evidence negating an essential element of the non-moving party's case, or (ii) by showing that the non-moving party lacks evidence of an essential element of its claim or defense.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party meets its burden of production, the burden then shifts to the non-moving party to identify specific facts from which a fact-finder could reasonably find in the non-moving party's favor.  *Celotex*, 477 U.S. at 324.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.  However, the court will not draw unreasonable inferences from circumstantial evidence and cannot believe evidence that does not exist.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier-of-fact for the non-moving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380; *see also Nelson v. Pima Cmty. College*, 83 F.3d 1075,

**MEMORANDUM DECISION AND ORDER - 6**

1081-82 (9th Cir. 1996) ("Mere allegations and speculation do not create a factual dispute for purposes of summary judgment.").

      2.    <u>Canyon County Did Not Discriminate or Retaliate Against Mr. Claus Due to His Military Service</u>

"USERRA forbids employment discrimination on the basis of membership in the armed forces." *Townsend v. Univ. of Alaska*, 543 F.3d 478, 482 (9th Cir. 2008) (citing 38 U.S.C. §§ 4301(a)(3), 4311(a)). Congress enacted USERRA to "clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights and provisions." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). USERRA recognizes claims for both discrimination and retaliation. *See Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1105 (9th Cir. 2017) (outlining standard for USERRA discrimination claims); *Wallace v. City of San Diego*, 479 F.3d 616, 624-25 n.1 (9th Cir. 2007) (outlining standard for USERRA retaliation claims).

The predicate step in a USERRA discrimination or retaliation claim requires courts to determine whether the employee suffered an adverse employment action. *See Posin v. Cty. of Orange*, 2016 WL 5858706, at *3 (C.D. Cal. 2016). If the employee suffered an adverse employment action, a claim of discrimination pursuant to USERRA proceeds under a burden-shifting approach where the employee "first has the burden of showing, by a preponderance of the evidence, that his or her protected status was a substantial or motivating factor in the adverse employment action; the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken the same action without regard to the employee's protected status." *Huhmann*, 874 F.3d at 1105.[3]

---

[3] Although a retaliation claim also requires a showing that the employee exercised his USERRA rights, the burden-shifting framework for discrimination and retaliation claims under USERRA is identical. *Compare Wallace*, 479 F.3d at 624, *with Huhmann*, 874 F.3d at 1105.

**MEMORANDUM DECISION AND ORDER - 7**

Here, Mr. Claus alleges that Canyon County's "discrimination, retaliation, and discharge of [his] employment because he reported discriminatory pay practices based on his military service as a [JAG] attorney constitutes a material breach of USERRA."  Pl.'s Compl. at ¶ 37 (Dkt. 1).  Canyon County disagrees, anchoring its arguments to USERRA's above-referenced burden-shifting construction.  Canyon County argues that (i) Mr. Claus cannot show that his military service was a substantial or motivating factor in his termination, and (ii) it would have terminated his employment even if he had never served in the military.  Def.'s Mem. ISO MSJ at 9-18 (Dkt. 28-1).  For the reasons that follow, the Court agrees with Canyon County.

> a.   *USERRA Step One: Mr. Claus's Military Service Was Not a Substantial or Motivating Factor in Canyon County's Decision to Terminate His Employment*

To establish a discrimination or retaliation claim under USERRA, an employee must first show that his or her military status was at least a "motivating factor" behind the adverse employment action.  38 U.S.C. § 4311(c)(1)-(2).  "Under USERRA, military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration."  *Campbell v. Catholic Cmty. Servs. of W. Wash.*, 2012 WL 13020051, at *2 (W.D. Wash. 2012).  The Ninth Circuit instructs that courts may consider a "variety of factors" in determining whether an employer had discriminatory motivation, including (i) proximity in time between the employee's military activity and the adverse employment action, (ii) inconsistencies between proffered reasons and other actions of the employer, (iii) an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and (iv) disparate treatment of certain employees compared to other employees with similar work records or offenses.  *Leisek*, 278 F.3d at 900.  The court may consider "all record evidence," including the employer's "explanation for the actions taken."  *Id*.

**MEMORANDUM DECISION AND ORDER - 8**

Canyon County argues that each of these factors, when applied to the undisputed facts here, exposes Mr. Claus's inability to satisfy his burden to show that his military service was a motivating factor in his termination.  Pl.'s Mem. ISO MSJ at 9-14 (Dkt. 28-1).  Canyon County points out that, first, it terminated Mr. Claus roughly five years after his military service ended, and ten months after his compensation concerns (tied to his prior military service) were fully resolved in his favor.[4]  Second, it terminated Mr. Claus only after conducting an investigation into whether his conduct violated internal policies, court rules, or professional standards.  Third, it not only hired Mr. Claus aware of his veteran status but also never expressed any hostility toward the military generally, his military service specifically, or his request for additional compensation owing to his military service.[5]  Fourth, it did not treat Mr. Claus more harshly than others without a record of military service for similar offenses.  *Id*.  Canyon County submits that these circumstances show that Mr. Claus's military service played no role (let alone a substantial or motivating factor) in his termination.

Mr. Claus flatly disputes this account, insisting that "there are facts in the record demonstrating that (i) Canyon County discounted [his] JAG service time for salary calculation purposes, (ii) [he] repeatedly complained of such discounting and explicitly reported that he was being discriminated against on account of his military service, (iii) Canyon County thereafter began retaliating against [him], and (iv) Canyon County offered a false reason to terminate [him] in order to hide its discriminatory motive to terminate his employment in retaliation for his complaints regarding the discounting of his military JAG service for salary calculation

---

[4]  By comparison, Canyon County highlights the temporal proximity between Mr. Claus's August 6, 2018 termination and his July 20, 2018 disclosure of a witness list in a sealed CPA case.  Pl.'s Mem. ISO MSJ at 11 (Dkt. 28-1).

[5]  Canyon County actually references Mr. James's father's military service as evidence of its regard for Mr. Claus's own military service.  Pl.'s Mem. ISO MSJ at 13 (Dkt. 28-1).

**MEMORANDUM DECISION AND ORDER - 9**

purposes." Pl.'s Opp. to MSJ at 6-12 (Dkt. 39). With this overarching theory of the case driving

his analysis of the *Leisek* factors, Mr. Claus asserts that disputes of material fact surround the

issue of whether his military service was a substantial or motivating factor in his termination. *Id*.

at 12-16. The argument logically follows but is only as strong as its foundation.

The cornerstone of Mr. Claus's case against Canyon County, as well as his response to its

summary judgment efforts, is that Canyon County's May-October 2017 compensation overhaul

discriminated against him as a military veteran by discounting years of his legal experience in

the JAG. And his subsequent complaints about the alleged discriminatory scheme triggered a

string of retaliatory acts by his superiors culminating in his termination in August of 2018. But

this foundation erodes upon closer scrutiny. The compensation scheme that Mr. Claus alleges

was discriminatory was not; it treated military veterans and non-veterans alike. The players who

instituted the compensation scheme were not the same players who terminated Mr. Claus. The

players who terminated Mr. Claus (Messrs. Bazzoli and James), months earlier, lobbied on his

behalf and succeeded in making him financially whole. Their subsequent acts leading up to Mr.

Claus's termination were facially unrelated to Mr. Claus's military service and were supported

by plausible work-related justifications. Against these undisputed facts, the inferences of

discriminatory motivation and retaliation, that Mr. Claus urges, are unreasonable and will not

carry his burden.

First, the compensation scheme was not discriminatory. Instead, it was a genuine attempt

by Canyon County to align compensation of public defenders with their years of relevant

criminal experience (not merely years since Bar admission). The overhaul was facially neutral,

and as applied, did not disparately treat military veterans worse than non-veterans. While it is

true that the overhaul initially discounted a portion of Mr. Claus's non-criminal legal work in the

JAG – namely, his time practicing environmental law, labor law, contract law, and other civil

law during January 2005 through May 2013 – it equally discounted the non-criminal legal work of other Canyon County public defenders who were not military veterans.  Wagoner Decl. at ¶¶ 11-12 (Dkt. 32).[6]  Critically, *six* other Canyon County public defenders who were not military veterans were impacted by the new compensation formula because it discounted their prior legal experience.  *See* Def.'s SOF at No. 18 (Dkt. 28-2); Pl.'s SODF at No. 18 (Dkt. 39-1).  Mr. Claus has no principled answer for how the overhaul could have been motivated by discriminatory intent when it adversely impacted veterans and non-veterans alike.  *See Leisek*, 278 F.3d at 900 (no "disparate treatment of certain employees as compared to other employees").

Likewise, Mr. Claus does not meaningfully address the fact that, in the first iteration of the compensation overhaul, he *was* credited for some of his years of work in the JAG.  Oral argument confirmed that approximately four years of Mr. Claus's time as a JAG attorney had been credited toward his years of service calculation.  These four years, combined with his two years as a public defender in Twin Falls, Idaho, thus resulted in Mr. Claus being recategorized at first as a sixth-year Deputy Public Defender I.  Again, if the overhaul was motivated by discriminatory intent to deny compensation to military veterans like Mr. Claus, it would not have operated in this way, namely to credit him for years of legal work in the military.

Moreover, Messrs. Bazzoli and James – the players whom Mr. Claus alleges retaliated against and pretextually terminated him in 2018 – were not involved in the creation of the allegedly discriminatory compensation scheme or the initial decision regarding the number of years of service to assign to him.  Def.'s SOF at No. 19 (Dkt. 28-2).  Rather, Mr. Bazzoli became the Chief Public Defender in October 2017, and Mr. James became his Chief Deputy in

---

[6]  The overhaul also did not credit Mr. Claus for a period of unemployment from May 2013 to November 2014, and his work as a mail clerk for the United States Postal Service from November 2014 to November 2015.  Wagoner Decl. at ¶ 12 (Dkt. 32).  Mr. Claus cannot make a credible argument of disparate treatment regarding these periods of non-legal employment.

**MEMORANDUM DECISION AND ORDER - 11**

December 2017, months after these decisions were made by their predecessors and weeks after

the new compensation scheme took effect (on October 1, 2017). *Id.* at Nos. 20-21. This is

crucial because it breaks the inferential chain of discriminatory intent, alleged by Mr. Claus,

between the compensation scheme and his complaints, and his termination. We know that this

inferential chain was broken because, in December 2017, one of Mr. Bazzoli's first acts as

Canyon County Chief Public Defender was to lobby Canyon County's compensation committee

on Mr. Claus's behalf. *See* Def.'s SOF at Nos. 23-24 (Dkt. 28-2); Pl.'s SODF at Nos. 23-24

(Dkt. 39-1). Mr. Bazzoli succeeded in convincing the compensation committee to credit Mr.

Claus for all of his 13 years of his legal experience, including all of his time in the JAG, and to

grant him full back pay. *Id.*[7] Simply put, these are not the actions of discriminatory actors.

    Mr. Claus attempts to salvage the inferential chain of discriminatory intent by alleging

"pervasive retaliation" by Messrs. Bazzoli and James in the period between January 2018 (when

he was granted back pay) and August 2018 (when he was terminated). Pl.'s Opp. to MSJ at 7

(Dkt. 39). He claims (i) Messrs. Bazzoli and James would constantly make belittling remarks to

him about being a "14-year attorney,"[8] (ii) he was transferred off of his criminal assignment to a

---

[7]  Mr. Claus claims that (i) Mr. Bazzoli "took no action" on his complaints of
discrimination before October 11, 2017, and (ii) that Messrs. Bazzoli and James were "highly
dismissive" of his discrimination claim following a December 12, 2017 meeting. Pl.'s Opp. to
MSJ at 6-7 (Dkt. 39). Any inaction on Mr. Bazzoli's part in October 2017 is easily explained by
the fact that he had not yet started work as the Chief Public Defender. Def.'s SOF at No. 20
(Dkt. 28-2); Pl.'s SODF at No. 20 (Dkt. 39-1). And whether or not Messrs. Bazzoli or James
were dismissive of Mr. Claus's discrimination claim during the December 12, 2017, meeting, it
is undisputed that, *the next day*, Mr. Bazzoli reached out to Ms. Howard (the then-interim Chief
Public Defender) and Deepak Budwani to discuss Mr. Claus's salary complaints. *See* Exs. A &
B to Bazzoli Decl. (Dkt. 29). Mr. Claus's claims thus lack merit.

[8]  Mr. Claus similarly contends that Mr. Bazzoli singled him out as the only attorney in
the office who was not being paid for all years of experience since passing the Bar. Pl.'s Opp. to
MSJ at 13 (Dkt. 39). Except it is undisputed that Mr. Claus was not the only attorney whose
years of service calculation was adjusted downward. *See supra* (citing Def.'s SOF at No. 18

**MEMORANDUM DECISION AND ORDER - 12**

child protection assignment, (iii) he was singled out for minor offenses, and (iv) Messrs. Bazzoli and James did not praise him like they did other attorneys. *Id*. at 8-9. Mr. Claus urges the Court to infer that Messrs. Bazzoli and James committed these alleged retaliatory acts because of his complaints about the allegedly discriminatory compensation scheme and his status as a military veteran.

This is a bridge too far. Even if true, these workplace acts are facially unrelated to Mr. Claus's military service. And Canyon County has offered plausible work-related justifications for the acts. *See* Def.'s Reply ISO MSJ at 6-9 (Dkt. 45) (Canyon County offering context, devoid of discrimination or anti-military animus, to Mr. Claus's complaints). Significantly, it is undisputed that Mr. Bazzoli did not document Mr. Claus's deficiencies or any workplace discipline therefor during this time; he was not "building a file" to justify terminating Mr. Claus. Pl.'s SODF at No. 25-26 (Dkt. 39-1). Against this backdrop – and given that Mr. Bazzoli went to bat for Mr. Claus to grant him full back pay – the Court is simply unwilling to infer that Messrs. Bazzoli and James committed these workplace acts with discriminatory intent. Accordingly, Mr. Claus is left with "stray remarks" by Messrs. Bazzoli and James leading up to his termination that do not restore the broken inferential chain of discriminatory intent. *See Heldwein v. ZMD America, Inc.*, 2015 WL 3756400, at *5 (D. Idaho 2015) ("[T]he Court may infer an employer's motive from his acts and remarks. Yet stray remarks alone are insufficient to establish discrimination in the employment context.").

Without these moorings, Mr. Claus cannot satisfy the *Leisek* factors. *See Leisek*, 278 F.3d at 900. The time in between his military service (or between his request for upward compensation adjustment) and his termination is too attenuated to draw any sort of reliable

---

(Dkt. 28-2); Pl.'s SODF at No. 18 (Dkt. 39-1)); *see also* Wagoner Decl. at ¶¶ 11-12 (Dkt. 32) (discussing years of service calculation "attributed to a number of different attorneys").

**MEMORANDUM DECISION AND ORDER - 13**

connection.  There is no inconsistency between Mr. Bazzoli's actions in terminating Mr. Claus

and other actions taken by Canyon County.  There is no evidence of Canyon County's hostility

toward the military or Mr. Claus's military service.  Finally, there is no evidence that Mr. Claus

was treated less favorably than others for similar offenses – to be sure, the events leading up to

his termination had never happened before at the Canyon County Public Defender's Office.  Mr.

Claus's belief that he was discriminated and retaliated against because of his military service,

without more, does not make it so.  Nor does it create a genuine issue of material fact when the

balance of the record paints a contrasting picture.

Even when the evidence is viewed in the light most favorable to Mr. Claus, he failed to

submit evidence beyond his own conclusory allegations showing that, in terminating him,

Canyon County "relied on, took into account, considered, or conditioned its decision" on his

veteran status.  *Campbell*, 2012 WL 13020051, at *2.  Summary judgment is therefore proper in

this respect.

> ### b.    *USERRA Step Two: Canyon County Would Have Terminated Mr. Claus's Employment Even if He Had Never Served in the Military*

Assuming Mr. Claus was able to point to evidence from which a jury could infer

retaliatory motivation in violation of USERRA, the burden would then shift to Canyon County to

establish that it would have still terminated him in August 2018 regardless of his military service.

*Huhmann*, 874 F.3d at 1105.  Canyon County argues it unquestionably would have because Mr.

Claus's termination was the direct result of him "intentionally sharing a witness list in a sealed

parental rights matter with a friend unaffiliated with the Canyon County Public Defender's

Office."  Pl.'s Mem. ISO MSJ at 14-15 (Dkt. 28-1).

Canyon County's argument is easy to distill: Mr. Claus should not have intentionally

disclosed what he understood to be confidential information in a CPA proceeding; and because

**MEMORANDUM DECISION AND ORDER - 14**

he did, he violated various internal protocols and was fired.  These breaches, in addition to

possible IRPC and Idaho Code violations, were considered to be severe, prompting Messrs.

Bazzoli and James to investigate the matter with Mr. Claus himself, Mr. Claus's then-opposing

counsel, Bar counsel, the judge in the involved CPA proceeding, and a representative from the

Canyon County Prosecuting Attorney's office.  Def.'s SOF at Nos. 7-11 (Dkt. 28-2); Pl.'s SODF

at Nos. 7-11 (Dkt. 39-1).  Within days of the disclosure, Mr. Claus was terminated because, in

part, he "direct[ed] a document to be filed by someone other than [Canyon County Public

Defender's Office] support staff and who is not employed or authorized to be filing documents

on behalf of this office . . . ."  Def.'s SOF at No. 12 (Dkt. 28-2) (citing Exs. G & H to Bazzoli

Decl. (Dkt. 29)); Pl.'s SODF at No. 12 (Dkt. 39-1).

      Mr. Claus neither disputes what he did, the inquiries that followed to understand what

took place, nor Messrs. Bazzoli and James's subjective belief that his actions constituted a

serious violation of various rules and laws.  Pl.'s SODF at Nos. 7-9 (Dkt. 39-1).  Rather, he

questions the legal correctness of the conclusions and alleges pretext.  *Id.* at No. 9.  With this in

mind, he argues (i) his client suffered no prejudice in how the witness list got filed; (ii) he did not

violate the IRPC or internal policies when he asked Ms. Wilson to file the witness list because,

according to an ethics expert, she was under his supervision and he was able to maintain any

duty of confidentiality; and (iii) Messrs. Bazzoli and James could not have seriously believed he

violated Idaho Code § 18-3203 (prohibiting the intentional filing of "false or forged"

instruments) because they never filed a written grievance with the Bar as required under Rule 8.3

of the IRPC.  Pl.'s Opp. to MSJ at 10-12, 16-18 (Dkt. 39).  Mr. Claus in turn maintains that he

did nothing wrong and actually "should be commended for his zealous advocacy and problem-

solving."  Pl.'s Opp. to MSJ at 10 (Dkt. 39).  These arguments, however, largely miss the point.

**MEMORANDUM DECISION AND ORDER - 15**

The proper inquiry here is not whether Messrs. Bazzoli and James were technically correct in their belief that Mr. Claus's conduct violated any policies, rules, or statutes (the Court takes no stand on that question), but whether their belief was genuine. The lynchpin issue thus turns on the reasons – correct or not – for terminating Mr. Claus.

As an at-will employee, Mr. Claus could be terminated at any time and for any reason, so long as the reason does not violate public policy. *See, e.g.*, Pl.'s Opp. to MSJ at 18 (Dkt. 39) ("The exact same action may be legal or illegal based on the motivation, the 'why' behind the action."). Veteran status within employment sectors supplies one such public policy. *Id*. at 19 ("Congress has chosen to protect servicemembers from adverse employment action based upon military service."). But here, there is no evidence on which a jury could reasonably find that Mr. Claus was terminated because of his military service. That he at one time served in the military and was fired years later is a mere coincidence, not a cause of action under USERRA. There is no thread tying these two events together except Mr. Claus's unsubstantiated belief that his termination was incited by previously-resolved pay complaints that brought his time as a JAG attorney into its orbit. This, again, is not enough to avoid summary judgment.

On the other hand, Canyon County has established that, following an investigation, it terminated Mr. Claus for reasons associated with a particular filing in a CPA proceeding and wholly independent of his military service. It has correspondingly established that, in terminating Mr. Claus, he was treated no differently than any attorney would have been under those same circumstances. Although USERRA provides veterans many protections, it does not guarantee continued employment. Mr. Claus's claims against Canyon County are grounded in personal grievances and perceived slights which do not amount to violations of rights protected by law. In short, he would have been terminated even if he had never served in the military. Summary judgment is therefore proper in this alternate respect.

**MEMORANDUM DECISION AND ORDER - 16**

3.     Mr. Claus's Emotional Distress Claims Are Dismissed

Under Idaho law, both negligent and intentional emotional distress claims require the

breach of a duty owed by the defendant to the plaintiff.  *See Edmondson v. Shearer Lumber*

*Prods.*, 75 P.3d 733, 740 (Idaho 2003) (requiring "wrongful conduct" to state intentional

infliction claim); *Frogley v. Meridian Joint School Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013)

(requiring breach of "a legal duty recognized by law" to state negligent infliction claim).  Mr.

Claus's USERRA claim is dismissed as a result of the instant decision.  Thus, he cannot show

that Canyon County breached any legal duty to him premised thereon.  *Compare* Def.'s Mem.

ISO MSJ at 19 (Dkt. 28-1), *with* Pl.'s Opp. to MSJ at 19-20 (Dkt. 39).  His emotional distress

claims must therefore fail.  Summary judgment is proper in this respect.

**B.     Mr. Claus's Motion to Strike (Dkt. 40)**

Paragraph 11 of Canyon County's Statement of Undisputed Facts discusses the exchange

between Messrs. Bazzoli, James, and Andrews (Idaho State Bar Counsel) in the aftermath of Mr.

Claus's at-issue filing.  It reads:

> Mr. Bazzoli and Mr. James spoke with Mr. Brad Andrews, Idaho State Bar Counsel,
> regarding Mr. Claus's conduct.  Mr. Andrews informed Mr. Bazzoli that the
> conduct could be a violation of the Idaho Rules of Professional Conduct ("IRPC"s)
> and that Canyon County needed to discuss the matter with the judge (Judge Tucker
> in this case) and opposing counsel.  Based on the guidance from Bar Counsel, Mr.
> Bazzoli and Mr. James spoke with the judge, opposing counsel, and a representative
> from the Canyon County Prosecuting Attorney's office regarding the incident.

Def.'s SOF at No. 12 (Dkt. 28-2) (internal citations omitted); *see also* Bazzoli Dep. at 166:22-

168:9, 254:15-255:12, attached as Ex. B to Howland Decl. (Dkt. 34); James Dep. at 91:1-93:14,

attached as Ex. C to Howland Decl. (Dkt. 34).

Mr. Claus moves to strike as hearsay the portions of Paragraph 11 (the second and third

sentences) that attribute statements to Mr. Andrews.  Pl.'s Mot. to Strike at 2 (Dkt. 40) ("These

lines state what Mr. Andrews purportedly stated to Mr. Bazzoli.  Mr. Andrews has offered no

**MEMORANDUM DECISION AND ORDER - 17**

testimony or declaration in this case and this representation by Canyon County of what Mr. Andrews purportedly stated must be stricken as hearsay pursuant to F.R.E. 801 and 802 as it is offered for the truth of the matter asserted.").  Mr. Claus contemporaneously supplements the record with a declaration from Mr. Andrews, acknowledging this conversation but not exactly what was said (except insofar as Mr. Andrews (i) "do[es] not recall discussing any issues of potential criminal or felonious conduct or employment issues" and (ii) "ethics-related calls do not satisfy an attorney's reporting obligations under IRPC 8.3").  Andrews Decl. at ¶¶ 4-5 (Dkt. 41).

The statements Mr. Claus seeks to strike are not integral to the Court's decision.  What is clear to the Court is that Messrs. Bazzoli and James were troubled enough about Mr. Claus's conduct to consult Mr. Andrews.  This step, combined with their discussions with opposing counsel, Judge Tucker, and the Canyon County Prosecuting Attorney's office, reflect a genuine level of concern about the situation and support Canyon County's proffered reasons why Mr. Claus was terminated.  Mr. Claus's Motion to Strike is therefore denied as moot.

### III.  <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Defendant Canyon County's Motion for Summary Judgment (Dkt. 28) is GRANTED; and

2.      Plaintiff Johannes Claus's Motion to Strike (Dkt. 40) is DENIED AS MOOT.



DATED:  March 15, 2022

_____
Honorable Raymond E. Patricco
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**